IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    *Plaintiff*,<br><br>v.<br><br>PEANUT CORPORATION OF AMERICA,<br><br>    *Defendant*. | Civ. A. No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, Hartford Casualty Insurance Company, and for its Complaint for Declaratory Judgment alleges as follows:

### PARTIES

1.    Plaintiff Hartford Casualty Insurance Company ("Hartford") is an Indiana corporation with its principal place of business in Hartford, Connecticut.

2.    Defendant Peanut Corporation of America ("PCA") is a Georgia corporation with its principal place of business in Lynchburg, Virginia.

### JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states.

Dockets.Justia.com

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because PCA resides in the district and because a substantial part of the events or omissions giving rise to the claim occurred in the district.

5. The Court has personal jurisdiction over PCA because it maintains its principal place of business in the district, resides in the district, is found in the district and otherwise maintains minimum contacts with the district such that assertion of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

6. This Court has the jurisdiction and power to grant the relief sought by Hartford pursuant to 28 U.S.C. §§ 2201 & 2202.

## NATURE OF THE CASE

### The Underlying Suits and Claims

7. Suits have been filed and claims have been asserted against PCA arising out of its alleged manufacture, sale, handling or distribution of peanuts or peanut products allegedly contaminated with salmonella bacteria (the "Salmonella Claims").

8. In one suit, styled *Meunier v. Peanut Corp. of America*, Civil Action No. 1:09-CV-12 (WLS), filed in the United States District Court for the Middle District of Georgia on January 20, 2009, the plaintiffs allege that their minor son ingested a peanut butter product manufactured by PCA, developed symptoms of illness, and was found to be infected with salmonella bacteria. Plaintiffs seek an unstated sum of damages from PCA but allege the matter in controversy exceeds $75,000.

9. In a second suit, styled *Almer v. Peanut Corp. of America*, filed in the District Court of Hennepin County, Minnesota, the plaintiff alleges that the decedent consumed peanut butter manufactured by PCA, that the peanut butter was adulterated with salmonella bacteria,

that the decedent contracted salmonellosis and that she died on December 21, 2008. Plaintiff seeks damages from PCA in an amount in excess of $50,000.

10.     The discovery of salmonella bacteria in peanut butter manufactured by PCA led PCA to institute, on January 13, 2009, a voluntary nationwide recall of its peanut butter products produced on or after July 1, 2008. PCA has since expanded its voluntary recall and most recently, on January 28, 2009, announced a recall of all peanuts and peanut products processed at its Blakely, Georgia, plant since January 1, 2007.

11.     Based on the number of persons reportedly infected with salmonella bacteria in peanut products sold by PCA, it is likely that a number of additional Salmonella Claims will be asserted against PCA seeking damages because of bodily injury, sickness, disease, or death resulting therefrom (the "Bodily Injury Claims").

12.     In addition, manufacturers of food products for human and animal consumption have asserted claims against PCA for costs and expenses relating to the recall of products they manufactured that contained peanut products sold by PCA, or relating to the destruction or disposal of such products, alleging injury or damage to their products arising out of or related to the presence of, or suspected presence of, or exposure to salmonella bacteria.

13.     Based on the number of firms reportedly using PCA peanut products potentially contaminated with salmonella bacteria, it is likely that a number of additional Salmonella Claims will be asserted against PCA seeking damages because of physical injury to tangible property, including loss of use resulting from that physical injury, or loss of use of tangible property that is not physically injured, arising out of or related to products allegedly contaminated with salmonella bacteria (the "Property Contamination Claims").

## Hartford's Policies

14.     Hartford issued a primary general liability policy to PCA for the policy period October 1, 2006, to October 1, 2007, Policy No. 14 UUN UD5082 (the "2006-07 Primary Policy"), providing limits of liability of $1 million per occurrence and $2 million in the aggregate for bodily injury or property damage included within the "products-completed operations hazard."

15.     Hartford issued an umbrella liability policy to PCA for the policy period October 1, 2006, to October 1, 2007, Policy No. 14 RHU CZ9218 (the "2006-07 Umbrella Policy"), providing limits of liability of $5 million per occurrence and $5 million in the aggregate in excess of the underlying insurance (or a self-insured retention if no underlying insurance applies) for bodily injury or property damage included within the "products-completed operations hazard."

16.     Hartford issued a primary general liability policy to PCA for the policy period October 1, 2007, to October 1, 2008, Policy No. 14 UUN UD5082 (the "2007-08 Primary Policy"), providing limits of liability of $1 million per occurrence and $2 million in the aggregate for bodily injury or property damage included within the "products-completed operations hazard."

17.     Hartford issued an umbrella liability policy to PCA for the policy period October 1, 2007, to October 1, 2008, Policy No. 14 RHU CZ9218 (the "2007-08 Umbrella Policy"), providing limits of liability of $10 million per occurrence and $10 million in the aggregate in excess of the underlying insurance (or a self-insured retention if no underlying insurance applies) for bodily injury or property damage included within the "products-completed operations hazard."

18.     Hartford issued a primary general liability policy to PCA for the policy period October 1, 2008, to October 1, 2009, Policy No. 14 UUN UD5082 (the "2008-09 Primary Policy"), providing limits of liability of $1 million per occurrence and $2 million in the aggregate for bodily injury or property damage included within the "products-completed operations hazard."

19.     Hartford issued an umbrella liability policy to PCA for the policy period October 1, 2008, to October 1, 2009, Policy No. 14 RHU CZ9218 (the "2008-09 Umbrella Policy"), providing limits of liability of $10 million per occurrence and $10 million in the aggregate in excess of the underlying insurance (or a self-insured retention if no underlying insurance applies) for bodily injury or property damage included within the "products-completed operations hazard." (The 2006-07 Primary Policy, the 2007-08 Primary Policy, and the 2008-09 Primary Policy are collectively referred to herein as the "Primary Policies;" the 2006-07 Umbrella Policy, the 2007-08 Umbrella Policy and the 2008-09 Umbrella Policy are collectively referred to herein as the "Umbrella Policies;" and the Primary Policies and Umbrella Policies are collectively referred to herein as the "Policies").

## Application of the Policies to the Salmonella Claims

20.     Each of the Policies contain terms, conditions, exclusions, and limitations, including but not limited to those pertaining to policy limits, coverage for "bodily injury," coverage for "property damage" and coverage for claims arising out of the presence, suspected presence, or exposure to, among other things, bacteria.

21.     PCA and/or manufacturers to which it sold peanuts or peanut products have asserted that the Property Contamination Claims are covered under one or more of the Policies.

22.     PCA and/or the persons infected with the salmonella bacteria found at PCA's Blakely, Georgia, plant have asserted that the Bodily Injury Claims are covered under one or more of the Policies.

23.     An actual controversy exists between Hartford and PCA as to whether one or more of the terms, conditions, exclusions and limitations limit, exclude or nullify coverage under the Policies for one or more of the Salmonella Claims.

24.     Hartford reserves the right to seek to amend this Complaint as additional information becomes known.

## COUNT ONE—DECLARATORY JUDGMENT

25.     Hartford repeats and realleges paragraphs 1 to 24 above as if fully incorporated herein.

26.     An actual controversy exists between Hartford and PCA with respect to one or more issues regarding the coverage afforded to PCA under the Policies with respect to the Salmonella Claims.

27.     Hartford seeks a declaration of the rights and obligations of itself and PCA and of the legal relations between them.

## PRAYER FOR RELIEF

28.     WHEREFORE, Hartford prays for the following relief:

    a.  A declaratory judgment in its favor otherwise declaring the rights, obligations and legal relations of the parties under each of the Policies with respect to the Salmonella Claims; and

    b.  Such other and further relief as the Court deems just and equitable.

## <u>JURY DEMAND</u>

29.    Hartford respectfully demands trial by jury for all issues so triable.

Respectfully submitted,


/s/ Mark J. Peake
CASKIE & FROST
Mark J. Peake
2306 Atherholt Road
Lynchburg, Virginia 24501
Tel. (434) 846-2731
Fax (434) 845-1191

Of Counsel:

Susan M. Hogan
Lee H. Ogburn
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202-3201
Tel. (410) 752-6030
Fax (410) 539-1269

DC01 1102191v1 038386.000014